WEDMORE ET AL. *v.* STATE OF INDIANA

[No. 29,289.  Filed April 19, 1956.]

*George T. Patton,* of South Bend, for appellants.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Deputy Attorney General, for appellee.

ACHOR, J.—This is an appeal from a criminal action charging the appellants and one Holderman of contributing to the delinquency of minors by encouraging them "to use intoxicants, to-wit: beer." The appellants were tried and found guilty by a jury as charged, and were sentenced to pay a fine of $250 each. Judgment was rendered accordingly, from which this appeal is taken.

Appellants assign error in the overruling of three separate motions to be discharged for lack of prosecution under the "term statutes," §§9-1402 and 9-1403 (Acts 1905, ch. 169, §§219 and 220, p. 584; 1927, ch. 132, §12, p. 411).

Section 9-1402, *supra,* in part provides:

"... And no defendant shall be detained in jail, without a trial, ... more than two (2)

terms after his arrest and commitment thereof
. . .”

Section 9-1403, *supra,* provides in part:

"No person shall be held by recognizance to answer an indictment or affidavit without trial for a period embracing more than three (3) terms of court, . . ."

The record shows the charges against the appellants were filed on April 4, 1953, and they were arrested on the same day. On April 7, 1953, they were released on their own recognizance "for the reason they are charged in another cause in this court and are now under $5000 bond each."

The record shows that neither of appellants were held by any recognizance bond for this charge until appellant Jack Wedmore gave a bond in the amount of $1000 approved on December 7, 1954. Between that date and the time of the trial, January 11, 1955, three terms of court had not run.

As to the appellant, Richard Wedmore, the record does not show that he ever gave bond or was in jail under the charge with which we are concerned in this case. The record does show that he was confined in jail and in the Indiana State Reformatory under another charge.

It was incumbent upon the appellants to show that they came clearly within the terms of the provisions of the above statutes. Where it appears that appellants gave no recognizance bonds by reason of the action with which we are here concerned, and were not in jail as a result of this charge for the period provided in the related statute (§9-1402, *supra*), the statutes have no application in such cases and appellants are not entitled to be discharged thereunder. *Woodward* v. *State* (1910), 174 Ind. 743, 93 N. E. 169:

*State* v. *Beckwith et al.* (1947), 225 Ind. 288, 290, 291, 74 N. E. 2d 742, 743.

This court in *State* v. *Beckwith, supra,* made the following comment relative to a like situation:

"The appellees have placed much stress upon the fact that each of them was named as a defendant in an indictment returned in the Marion Criminal Court on June 20, 1941, in Cause No. 74552 of that court (which was *nolle prossed* on June 16, 1942), and that each of these defendants was recognized to appear in this indictment at the time of its return. The appellees contend that this indictment was on the same facts, and this being the situation, no further bonds or bail were required or necessary when the indictments were returned in the cases involved in this appeal. With this contention we cannot agree. The giving of bail bond in Cause No. 74552 could under no circumstances be considered as tantamount to the letting of the appellees to bail in the cases now under consideration. The recognizance bonds given in Cause No. 74552 were to guarantee an appearance in that case and in no other."

Since the appellants have not brought themselves within the purview of the statutes (§§9-1402 and 9-1403, *supra*) upon which they rely, we find no error in the trial court's refusal to discharge the appellants.

The appellants further claim error in the overruling of their motion for a new trial on the ground that the verdict is not sustained by sufficient evidence. The offense charged in this case alleges that the appellants and one Jack Holderman "did then and there unlawfully contribute to the delinquency of a minor child, to-wit: Nancy Marie Reed, a female then and there being under the age of eighteen (18) years, to-wit: fifteen (15) years; Martha Ann Richards, a female, then and there being under the age of eighteen (18)

years, to-wit: fourteen (14) years of age, and Carroll Bauer, a female, then and there being under the age of eighteen (18) years, to-wit: sixteen (16) years of age, by knowingly, wilfully encouraging and causing said Nancy Marie Reed, Martha Ann Richards, and Carroll Bauer to use intoxicants, to-wit: beer as a beverage, contrary to the form of statute in such cases made and provided and against the peace and dignity of the State of Indiana."

The statutes under which this action is brought are §10-812, Burns' 1942 Repl. (1953 Supp.), being Acts of 1945, ch. 218, §1, p. 1011; §9-3204 (14), Burns' 1942 Repl. (1953 Supp.), Acts 1945, ch. 356, §4, p. 1724, which read as follows:

> "It shall be unlawful for any person to cause or encourage any boy under the full age of eighteen (18) years, or any girl under the full age of eighteen (18) years, to commit any act which would cause such boy or girl to *become delinquent child* as defined by the laws of this state;
>
> "Or for any person to knowingly encourage or contribute to or in any way cause any such boy or girl to *violate* any law of this state or ordinance of any city.
>
> . . . . . .
>
> "Or for any person by any continued negligence or *wilful act*, to *encourage*, or cause any such boy or girl to become a delinquent child as defined by the laws of this state.
>
> "And, any person so offending shall be guilty of a misdemeanor and upon conviction thereof shall be fined not to exceed five hundred dollars ($500.00) to which may be added imprisonment in the county jail for a term not to exceed six (6) months." (Our italics.) §10-812, *supra*.
>
> "The words 'delinquent child' shall include any boy under the full age of eighteen (18) years and

any girl under the full age of eighteen (18) years who:

"(14)   Uses intoxicating liquor as a beverage, . . ." §9-3204(14), *supra*.

We must, therefore, consider the evidence most favorable to the state, not for the purpose of weighing the same, but for the purpose of determining whether there is any evidence of probative value to support the verdict of the jury. *Watson* v. *State* (1955), 234 Ind. 239, 125 N. E. 2d 793; *Dixon* v. *State* (1945), 223 Ind. 521, 62 N. E. 2d 629; *Osbon* v. *State* (1938), 213 Ind. 413, 13 N. E. 2d 223; *Rhoades* v. *State* (1949), 227 Ind. 126, 84 N. E. 2d 583.

Here we have a situation where two men, Richard Wedmore and Jack Holderman, picked up two girls, ages 14 and 15, under the false representation to the father of one of the girls that they were taking the girls to baby sit for Wedmore's sister, in which false representation the girls concurred. Instead the men told the girls, "We are going dancing, have a party," and took the girls up to Michigan and bought two cases of beer. The colloquy of the 14 year old girl regarding their trip to Michigan is as follows:

"Q.   They were going up there to get some beer?
"A.   Yes.
"Q.   And come back and drink it?
"A.   Yes."

On their return they took one case of beer to the Wedmore apartment, where they picked up Jack Wedmore, aged 23, Richard's brother, who was separated from his wife. Then the three men and the two girls, Martha Richards and Nancy Reed, went to pick up another girl, Carroll Bauer, aged 16, for Jack Wedmore. They all then went to the apartment of Jack

Holderman, where a case of beer was taken in. While in the Holderman apartment all the parties had spaghetti, meat and beer in the kitchen. Regarding Jack and Richard Wedmore drinking in the presence of the girls, Martha Richards stated: "I don't recall if they were drinking or not, although they probably were." From the kitchen the parties went into the living room to dance. Martha Richards consumed beer in the kitchen and also in the living room. Nancy Reed testified that she drank beer in the kitchen and also that she took some sips of beer during the dancing breaks. The parties ate, danced and drank beer and wine at the Holderman apartment from about 4:30 P. M. to 6:45 P. M., at about which time they all went back to the Wedmore apartment. When they left the Holderman apartment Carroll Bauer was drunk.

About 7:30 P. M. Jack Wedmore's wife, who was living at a separate address, came to the apartment to get some of her clothes. When she arrived Martha Richards and Jack Holderman were gone. Jack Wedmore and Carroll Bauer were in the kitchen and Nancy Reed was in the bedroom with Richard Wedmore. The "party" broke up when Mrs. Wedmore asked the age of one of the girls and called the police.

In challenging the sufficiency of the evidence to sustain the verdict, appellants rely upon the fact that in order to support a conviction there must be an affirmative, positive and purposeful act committed by the defendants which encouraged the minors to "use(s) intoxicating liquor as a beverage." §10-812, *supra*. See *Embry* v. *State* (1951), 229 Ind. 179, 96 N. E. 2d 274; *Murphy* v. *State* (1916), 61 Ind. App. 226, 111 N. E. 806; *Stone* v. *State* (1942), 220 Ind. 165, 41 N. E. 2d 609. It is urged that the evidence fails to establish this essential element of the charge. For example, it is argued that for an adult to merely buy beer in the

presence of a minor is no criminal offense. For an adult to convey beer in a car with minors therein is no criminal offense. For an adult to place unopened cans of beer before a minor is no criminal offense. For an adult to open and drink beer in the presence of minors is no criminal offense. That an adult is guilty of no criminal offense if minors use or consume beer in his presence if he does not give them the beer or ask them to drink it.

Considered singly, we concur that none of the specific acts recited above constitute a criminal offense. However, the argument is an attempt to distort the fact by over-simplification. It could be argued with equal effect that because none of the members of the human body constitute a person that there is no person; or that there is no forest because it is composed solely of separate and distinct trees, none of which constitute a forest.

In determining whether appellants by "wilful act" "encourage(d)" these minors to "use(s) intoxicating liquor as a beverage," (§§10-812, *supra*, 9-3204(14), *supra*) all the positive and purposeful acts of appellants which *combined* to so encourage the minors must be considered. And contrary to appellants' contention for the evidence to be sufficient to sustain the specific criminal offense, it was not necessary to prove that appellants actually handed the liquor to the girls or asked them to drink it. Rather, the ultimate fact of encouragement is not limited to the direct, positive acts of giving, inviting or urging, as contended. The phrase "to encourage" involves the creation of the state of mind. It is true that this may be accomplished by the acts of giving, inviting or urging referred to by appellants. However, the effect is obviously not limited to such acts. Webster defines the word *encourage* as "To embolden, incite or induce,

. . ." It therefore necessarily follows that any and all of the purposeful acts of the appellants which emboldened, incited or induced these minor girls to become delinquent by drinking intoxicating liquor as a beverage combined to constitute the criminal offense. The triers of the fact might reasonably have inferred that the combined purposeful acts of the appellants, including their trip to Michigan with the girls to get the beer, bringing it into their apartments and with it staging a dancing and drinking party, did in fact "embolden, incite and induce" these minor girls to drink the liquor, and that said influences were of such compelling force to these minor girls that the effect of appellants' said acts could be considered of no less positive force and effect than "to encourage" them to "use(s) intoxicating liquor as a beverage" as the terms are used in the statute.

We conclude, therefore, that the finding and verdict are respectively sustained by the evidence.

Judgment affirmed.

Bobbitt, C. J., and Landis, J. concur.

Arterburn, J. dissents with opinion in which Emmert, J. concurs.

### DISSENTING OPINION

ARTERBURN, J. (Dissenting).

I concur in the majority opinion excepting that portion which holds that the evidence is sufficient to sustain the verdict. The appellants were convicted of contributing to the delinquency of minors "by knowingly, wilfully, encouraging and causing said Nancy Marie Reed, Martha Ann Richards, and Carroll Bauer to use intoxicants, to-wit: Beer as a beverage, contrary to the form of statute." The offense charged is specific

and *limited to the sole act of encouraging minors to use beer* and nothing more. There is no evidence, in my opinion, that the appellants by any positive act, gave, invited, or urged the girls to use the beer. It may not have been at all necessary to "encourage" these girls to drink beer. The evidence is lacking on this point. We have no right to make any assumption on this point nor that the appellants are guilty of a criminal offense. A distinction should be made between juvenile delinquency (not a crime) and an act of an adult in *contributing to or encouraging* juvenile delinquency, which is a crime. The former proceedings are not criminal in nature while the latter proceedings constitute a crime. *State ex rel. Johnson* v. *White Circuit Court* (1948), 225 Ind. 602, 77 N. E. 2d 298.

Contributing to or encouraging delinquency, a *crime* must be stated and proved in the same manner as any other criminal offense. The general rules of evidence covering criminal prosecutions are applicable here. The state, in this case, has the burden of proving the defendant guilty beyond a reasonable doubt.

This is not a case such as that in *Murphy* v. *State* (1916), 61 Ind. App. 226, 111 N. E. 806, where an affirmative, positive, and knowing act was committed by the defendant. In that case, the defendant invited a minor into a saloon where intoxicating liquors were sold and purchased, and gave the minor a glass of beer. This is more like the case of *Stone* v. *State* (1942), 220 Ind. 165, 41 N. E. 2d 609, where the defendant was charged with contributing to the delinquency of a child by "encouraging said child to remain out all night." The evidence showed that the minor and the defendant met two boys and with them went to a park where the defendant left about eleven o'clock and the minor came home next morning. The court said in that case (220 Ind. 165, *supra*) on page 170:

"There is no evidence that Barbara, whose age is not disclosed, counseled or encouraged Katherine to remain out all night, or that she knew, or had reason to know, that Katherine intended to stay out all night, or that, knowing of such an intention, she had any power or influence to prevent it. This is clearly not sufficient to sustain the allegations of the first count of the affidavit."

The courts are limited in this state, in determining what are crimes by the wording of the statutes defining criminal offenses. The legislature has not yet reached such refinement in defining crimes involving moral conduct, that one in the presence of and observing the misconduct of another person, such as a minor (except one in *loco parentis*), has a legal duty to interfere in an attempt to prevent any improper or condemned conduct. However, admirable and commendatory, such attempts are to prevent crimes or delinquent acts, it is no penal offense to remain passive in its presence. Remaining passive, indifferent, or inactive, is different from *a positive act* of "encouraging" or urging minors to use intoxicating liquor.

As an example, if these girls had stolen any money or personal property placed on the table by the appellants and openly available to the girls at the homes they were in and at the time they were with these appellants, then on the same evidence as here presented would it be contended that the appellants could be convicted of "encouraging" the girls to commit such larceny? The record is just as devoid of any positive act of the appellants which reveals the appellants encouraged the girls to take and use the beer as it would be if the girls had taken the money laying on the table where it was available to them. Whether it be beer that was taken or money that was taken the principle is the same.

The appellants have not been charged with holding

a "party" which contributed to the delinquency to the girls in certain specific instances. Since no such formal charge of that kind is before us they may not be tried or convicted on evidence which might tend to show other deplorable acts on their part unless they are charged with such specific acts. Here, the only charge is the encouraging of minors *to use beer* and no other charge.

We may have the feeling that under the evidence in this case the girls and the boys involved in the events related were "protecting" each other by their testimony at the trial. Nevertheless, as much as we condemn such acts as revealed in the evidence, or suspect, or doubt the completeness of the testimony in this case, we may not supply the very obvious omissions necessary to prove the crime charged against the appellants.

There must be evidence of positive acts of the appellants showing they urged or encouraged the minors to use the beer. The proof of all the essential elements of a criminal charge must be made beyond a reasonable doubt before a person may be found guilty thereof. No matter how much we deplore the acts of the defendants or how revolting a criminal charge may be, it must be proved specifically as charged.

> "The verdict may not be based upon mere suspicion, possibility, guess or conjecture."

*Christen* v. *State* (1949), 228 Ind. 30, 39, 89 N. E. 2d 445.

I feel the evidence to be insufficient in this case to support the verdict of guilty.

Emmert, J. concurs.

NOTE: Reported in 133 N. E. 2d 842.