DELBERT L. SHORTER *v.* STATE OF INDIANA.

[No. 3-1272A94. Filed September 29, 1975. Rehearing denied November 10, 1975; Transfer denied January 23, 1976.]

*Thomas L. Ryan,* Deputy Public Defender, Allen County; *Barrie C. Tremper,* Trial and Appellate Counsel—Public Defender, Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

STATON, P.J.—Shorter was convicted of contributing to the delinquency of a minor under IC 1971, 35-14-1-1, Ind. Ann. Stat. § 10-812 (Burns 1956), sentenced to the Allen County Jail for six (6) months, and fined Five Hundred Dollars ($500.00). On appeal, Shorter challenges the sufficiency of the evidence which resulted in his conviction. We reverse.

The evidence most favorable to the State establishes that a thirteen-year-old juvenile girl had run away from her home without the permission of her parents. She had lived at the

Inner-City Mission for a time and left. Later, when she met Shorter on the evening of April 12, 1972, she was living with a man and woman referred to as "Hook" and Mary. The next morning, at 1:00 A.M., she left Hook and Mary's house with Shorter. He took her to Motel 6 in Allen County and checked into room eighty-five for the purpose of setting her up as a prostitute. She testified:

> "He just kept on sayin' that he could get some good tricks to come up there. He said, 'No,' He said: 'I won't keep you there.' He said he just wanted to keep me there for that night. And, he told me not to get on the phone and he told me not to go back to Hook and Mary's and he said: 'Don't you call you mom and dad, don't call nobody.' He said that he was gonna have me go out and make him some money."

Later the same morning at about 9:00 A.M., the police picked her up at the motel. Shorter was arrested the same morning in the motel parking lot.

Shorter was charged by affidavit with knowingly encouraging and causing a thirteen year old juvenile girl ". . . to be absent and remain away from her home and place of abode without just cause and without consent of her parent or guardian." He contends on appeal: (1) that encouraging a juvenile to "be absent and remain away from her home and place of abode" is not a crime, and (2) that there is no evidence that Shorter encouraged the juvenile involved to desert her home or place of abode.

The offense of contributing to the delinquency of a minor is defined by IC 1971, 35-14-1-1, Ind. Ann. Stat. § 10-812 (Burns 1956) as follows:

> "It shall be unlawful for any person to cause or encourage any boy under the full age of eighteen [18] years, or any girl under the full age of eighteen [18] years, to commit any act which would cause such boy or girl to become delinquent child as defined by the laws of this state; . . ."

Prior to the 1975 Amendment of IC 1971, 31-5-7-4 (Burns Code Ed.), a delinquent child was defined as follows:

"The words 'delinquent child' shall include any boy under the full age of eighteen [18] years and any girl under the full age of eighteen [18] years who:

(1) Commits an act which, if committed by an adult, would be a crime not punishable by death or life imprisonment;

(2) Is incorrigible, ungovernable or habitually disobedient and beyond the control of his parent, guardian, or other custodian;

(3) Is habitually truant;

(4) Without just cause and without the consent of his parent, guardian, or other custodian, repeatedly deserts his home or place of abode;

(5) Engages in an occupation which is in violation of law;

(6) Associates with immoral or vicious persons;

(7) Frequents a place the existence of which is in violation of the law;

(8) Is found begging, receiving or gathering alms, whether actually begging or under the pretext of selling or offering anything for sale;

(9) Unaccompanied by parent, patronizes or visits any room wherein there is a bar where intoxicating liquors are sold;

(10) Wanders about the streets of any city, or in [on] or about any highway or any public place between the hours of eleven o'clock p.m. and five o'clock a.m. without being on any lawful business or occupation, except returning home or to his place of abode after attending a religious or educational meeting or social function sponsored by a church or school.

(11) Is found in or about railroad yards or tracks; or who jumps on or off trains; or who enters a car or engine without lawful authority;

(12) Is found in or about truck terminals, including freight docks, garages, other buildings incidental thereto or who enters a truck or trailer without lawful authority;

(13) Uses vile, obscene, vulgar or indecent language;

(14) Uses intoxicating liquor as a beverage, or who uses opium, cocaine, morphine or other similar drugs without the direction of a competent physician.

(15) Knowingly associates with thieves or other maliciously vicious persons;

(16) Is guilty of indecent or immoral conduct;

(17) Deports himself so as to wilfully injure or endanger the morals or health of himself or others;

(18) Deports himself so as to wilfully injure or endanger the person or property of himself or others."

Although under IC 1971, 31-5-7-4(4), a juvenile may become delinquent by repeatedly deserting his home or place of abode, there is no specific provision making "being absent and remaining away from home" an act of delinquency. The State would have this Court interpret IC 1971, 31-5-7-4(4) to include as delinquent acts, the acts of being absent and remaining away from home. When this Court or the Supreme Court of Indiana interprets a statute penalizing certain conduct, we may not ". . . add elements to an offense or make punishable that which was not intended to be so by the Legislature."[1] *Utley* v. *State* (1972), 258 Ind. 443, 445, 281 N.E.2d 888, 890. As the Supreme Court of Indiana stated in *Kelley* v. *State* (1954), 233 Ind. 294, 298, 119 N.E.2d 322, 324:

"It is a fundamental rule in the construction of statutes that penal statutes must be construed strictly, or, as is otherwise stated, strictly construed against the state. The rule of strict construction means that such statutes will not be enlarged by implication or intendment beyond the fair meaning of the language used, and will not be held to include offenses and persons other than those which are clearly described and provided for. . . ."

Pursuant to IC 1971, 1-1-4-1 (Burns Code Ed.), we will give the words used in the statute their plain and usual meaning. *Dunbar* v. *State* (1974), 162 Ind. App. 375, 319 N.E.2d 630; *Fisher* v. *State* (1973), 156 Ind. App. 18, 294 N.E.2d 632. The

---

1. Although juvenile proceedings have been characterized as civil in nature, *Bible* v. *State* (1970), 253 Ind. 373, 254 N.E.2d 319, it can no longer be seriously contended that adjudication as a delinquent does not carry the possibility of penal sanctions. *See Breed* v. *Jones* (1975), 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346; *In re Winship* (1970), 397 U.S. 358, 905 S.Ct. 1068, 25 L.Ed.2d 368; *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527.

act of delinquency described in IC 1971, 31-5-7-4(4), *supra,* is the act of desertion. "Desert" is defined in The Random House Dictionary of the English Language (unabridged ed. 1969) as "to leave without intending to return, esp. in violation of a duty, promise, or the like; abandon; forsake. . . ." Webster's Third New International Dictionary (unabridged ed. 1970) defines "desert" as "to withdraw from or leave permanently. . . ." Certainly the acts of being absent and remaining away from home are relevant to a showing that the juvenile has deserted his home, but such acts are not synonymous with the act of desertion and alone do not constitute an act of delinquency.

The evidence supporting Shorter's conviction establishes that Shorter encouraged a juvenile's continued absence from her home by providing her with lodging for one night. Encouraging a juvenile to remain away from a home she has already deserted does not contribute to any defined act of delinquency under IC 1971, 31-5-7-4, *supra.* To so hold would be to criminalize conduct on the part of compassionate citizens who provide runaways with food and lodging and thereby facilitate a runaway's absence from home. This case is not analogous to *Davidson* v. *State* (1968), 249 Ind. 419, 233 N.E.2d 173, upholding a conviction of contributing to the continuing delinquency of a minor. In the instant case, the act of delinquency, the desertion, had already occurred.

The judgment of the trial court should be and the same hereby is reversed.

Garrard, J., concurs with opinion.

Hoffman, J., dissents with opinion.

## CONCURRING OPINION

GARRARD, J.—While I agree with Judge Staton that the conviction should be reversed, I am unable to accept the assertion

that encouraging a juvenile to remain away from a home already deserted may not contribute to any defined act of delinquency under our prior statute.

Furthermore, it appears that under the rationale of *Davidson* v. *State* (1968), 249 Ind. 419, 233 N.E.2d 173, one might be properly found guilty of contributing to delinquency by encouraging or causing a single repetition of the conduct proscribed by the juvenile statutes.

However, I agree that we may not expand the language of the statute by implication or intendment to criminalize conduct not within the fair meaning of the language employed by the legislature.

In Shorter's appeal the only statutory basis for upholding his conviction is the provision of IC 1971, 31-5-7-4(4) defining a delinquent as one who:

> "Without just cause and without the consent of his parent, guardian or other custodian repeatedly deserts his home or place of abode."

On direct examination the girl in question admitted that she had "run away". However, there was simply no attempt made nor evidence offered to establish her intent in running away, whether she had ever done so before, or what her reasons for doing so were.

In the absence of any such evidence it could not be determined that Shorter either encouraged or caused her to commit an act which would cause her to become a delinquent child under the quoted paragraph of the statute.

I therefore concur in reversal.

## DISSENTING OPINION

HOFFMAN, J.—I dissent from the disposition reached in the majority opinion.

The majority opinion herein holds that the allegation that Shorter caused a minor girl ". . . to be absent and remain

away from her home and place of abode . . ." is insufficient to charge a public offense. It does so by concluding that such conduct is not proscribed by IC 1971, 31-5-7-4 (Burns Code Ed.), and then relying upon the unquestionable principle that the courts may not enlarge the meaning of penal statutes beyond the fair meaning of the language used therein.

I cannot agree with the first step used by the majority opinion in its analysis of this issue. IC 1971, 31-5-7-4, *supra,* expressly and clearly defines as a delinquent any child who ". . . deserts his home or place of abode; . . ." However, through a purported inquiry into the exact meaning of the word "desert", the majority has engrafted onto this statutory language a requirement that the State allege and prove that the juvenile possessed an intent to permanently abandon his home at the time he left in order to be delinquent under such statute. Such a construction clearly contravenes both legislative intent and the fair meaning of the statutory language, and constitutes a violation of the very rule of law which the majority seeks to serve through its holding. See, *Utley* v. *State* (1972), 258 Ind. 443, 281 N.E.2d 888.

A proper resolution of this issue is reached upon consideration of those Indiana cases which hold that criminal offenses need not be charged in the exact language of the statute, but rather only words which import the same meaning. See: *Utley* v. *State, supra; Porter* v. *State* (1965), 246 Ind. 701, 210 N.E.2d 657; *Taylor* v. *State of Indiana* (1957), 236 Ind. 415, 140 N.E.2d 104; *Madison* v. *State* (1955), 234 Ind. 517, 130 N.E.2d 35; *Wasy* v. *State* (1955), 234 Ind. 52, 123 N.E.2d 462, 46 A.L.R. 2d 1389; *Wilson* v. *State* (1953), 232 Ind. 495, 112 N.E.2d 449; *Carter* v. *State* (1972), 155 Ind. App. 10, 291 N.E.2d 109 (transfer denied).

One of the definitions relied upon by the majority properly recognizes that a contemporaneous intent is not essential to a "desertion" but that the ultimate effect or result of leaving

permanently is essential. Therefore, in considering whether a juvenile's conduct in leaving home constitutes a desertion within the meaning of IC 1971, 31-5-7-4, *supra,* the net result of his conduct, and not his subjective intent, should be considered.

An application of this principle to the allegations of the affidavit questioned in the case at bar reveals that such affidavit clearly and adequately described the delinquent act of deserting home through its allegation that the juvenile in question was "absent [from] and remain[ed] away from her home. . . ." This is because an allegation that a juvenile remained away from home imports that the juvenile did not voluntarily return home although he could have done so. Thus, such an allegation is a fair equivalent of the statutory language requiring that the juvenile desert his home. I would hold that the allegations in the affidavit in the case at bar are sufficient.

The majority opinion also holds that there was insufficient evidence adduced at trial to support appellant's conviction.

It is the rule that when questions regarding the sufficiency of the evidence to support a conviction are raised on appeal, this court will only consider the evidence most favorable to appellee State together with all reasonable inferences to be drawn therefrom. We will neither weigh the evidence nor determine the credibility of witnesses. *Freeman* v. *State* (1975), 163 Ind. App. 650, 325 N.E.2d 485.

In the case at bar, the gist of the charge against appellant was that he encouraged a minor to commit an act of delinquency. The specific act of delinquency which appellant was alleged to have encouraged was desertion by the minor of her home or place of abode. See, IC 1971, 35-14-1-1, Ind. Ann. Stat. § 10-812 (Burns 1956) ; and IC 1971, 31-5-7-4, *supra.*

In determining whether the evidence in this cause establishes such an encouragement by appellant, it is relevant to consider the following language used by our Supreme Court in discussing similar cases:

"For one to be guilty of the charge here before us, we consider that more than mere presence of the Appellant is required. To satisfy the statutes, we suggest that the contribution must be of an inducive effect; that there must be *knowledgeable effort of at least a passive nature which reasonably can be said to be an enticement to do wrong,* that is, do the thing prohibited." (Emphasis supplied.) *Gray* v. *State* (1968), 249 Ind. 523, at 526, 233 N.E.2d 468, at 469.

"[T]he ultimate fact of encouragement is not limited to the direct, positive acts of giving, inviting or urging, as contended. The phrase 'to encourage' involves the creation of the state of mind. It is true that this may be accomplished by the acts of giving, inviting or urging referred to by appellants. However, the effect is obviously not limited to such acts. Webster defines the word *encourage* as 'To embolden, incite or induce, * * *.' It therefore necessarily follows that *any and all of the purposeful acts of the appellants which emboldened, incited or induced these minor girls to become delinquent by drinking intoxicating liquor as a beverage combined to constitute the criminal offense."* (Emphasis supplied in part.) *Wedmore, et al.* v. *State of Indiana* (1956), 235 Ind. 341, at 348-349, 133 N.E.2d 842, at 846. See also, *Reeves* v. *State* (1974), 161 Ind. App. 240, 315 N.E.2d 397.

The statements of fact and reasonable inferences therefrom most favorable to appellee State in the record before us establish that appellant encountered a thirteen-year old Caucasian female runaway at the home of a black couple who were his friends. This girl accompanied appellant and two of his male friends to the home of one of these friends. Prior to this trip, appellant stated to the girl that he was going to have her "go out and make him some money" the next day.

The girl stayed with appellant and his friends "[a]bout a half hour, maybe an hour", during which time she engaged in "unusual sex." Appellant then took the girl to a motel and obtained a room. She testified that before leaving her in the room, appellant told her "not to get on the phone and he told me not to go back to Hook and Mary's and he said: 'Don't call you [sic] mom and dad, don't call nobody.' " Appellant also

informed her that he wanted her to work for him as a prostitute.

The trier of fact could well have concluded from these facts that although this minor girl had left her home prior to meeting Shorter, he knowingly and actively attempted to induce her to make her absence from home permanent by instructing her not to leave the motel or contact her parents, and by offering her an illicit means of livelihood. Such conduct clearly constitutes an encouragement of the juvenile to permanently desert her home, which is prohibited under the cases and statutes cited hereinabove.

The judgment of the trial court should be affirmed.

NOTE.—Reported at 334 N.E.2d 710.